IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CODY TOLEDO,** | : | |
|     **Plaintiff,** | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-CV-3067 |
| | : | |
| **PRIMECARE MEDICAL DIVISION,** | : | |
|     **Defendant.** | : | |

**MEMORANDUM**

**GALLAGHER, J.**                                                                                      **JULY 2 , 2020**

Plaintiff Cody Toledo, a pretrial detainee currently incarcerated in the Northampton County Prison, brings this civil action pursuant to 42 U.S.C. § 1983, against Prime Care Medical Division ("Prime Care"). For the following reasons, the Court will dismiss Toledo's Complaint, and grant him leave to file an amended complaint.

**I.        FACTUAL ALLEGATIONS**

Toledo avers that he tested positive for COVID-19 on May 1, 2020 because of the "negligence of the institution and denial of grievances." (ECF No. 2 at 4.)[1] Attached to his Complaint, Toledo includes a "Memorandum" which provides his version of events which occurred from April 6, 2020 through May 13, 2020. (*Id.* at 12-16.) More specifically, Toledo avers that on April 6, 2020, he was quarantined in the prison as a result of COVID-19. (*Id.* at 12.) On that day, Toledo observed that others ("all the [correctional officers] and certain inmates (runners) or workers and some medical issued inmates that have diabetes, cancer etc") were issued masks and were wearing them. (*Id.*) When Toledo asked the Lieutenant on first shift whether they could all get a mask, the Lieutenant responded that not everyone needed one. (*Id.*)

---

[1] The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

1

Toledo then asked a second shift corrections officer why all of the inmates were not issued a mask, and that correctional officer responded that "a couple of [corrections officers] tested positive for COVID-19 and we need to keep the workers safe and all staff safe." (*Id.*) Toledo thought all inmates should be issued masks, and he because he thought "staff was ignoring [him], . . . he took it to the next level and asked for a grievance and a sick call slip." (*Id.*) On the sick call slip, Toledo asked to be tested for COVID-19 and to be given a mask. (*Id.*) Toledo avers that he never received a response and contends that medical staff "just laughed and told [them, presumably Toledo and other prisoners,] that [they] are all crazy and just paranoid." (*Id.*)

Toledo was given a grievance form on April 7, 2020, which he completed, detailing the above-noted concerns. (*Id.*) On April 10, 2020, Toledo again requested from medical that he be issued a mask. (*Id.* at 13.) Toledo overheard from a staff member that "K-block was locked down" because a couple of inmates tested positive for COVID-19; Toledo avers that K-block was right next to his block (G-block), "only a couple of feet away." (*Id.*) Toledo avers that he requested to be tested and issued a medical mask on a daily basis but received no response. (*Id.*)

Toledo received a response to his grievance on April 14, 2020. His grievance was found to be "non grievable," and he was advised that "Northampton County is following the recommendations of [its] healthcare provider, Primecare Medical." (*Id.*) Toledo appealed this grievance decision. (*Id.*) On April 17, 2020, Toledo, and the other inmates, received non-reusable masks from the corrections officers and were allegedly advised that these were the only masks that they would be receiving. (*Id.*) Toledo avers that it took "them" two weeks to provide the inmates with masks. (*Id.*) Toledo filed his second grievance on this date, requesting that all inmates get tested for COVID-19. (*Id.* at 13-14.)

On April 21, 2020, Toledo advised the second shift officer that he wasn't feeling well and had a sore throat. (*Id.* at 14.) The nurse was called, who checked his temperature and heart rate, and advised Toledo that he was fine. (*Id.*) On April 24, 2020, Toledo again requested the nurse because he was experiencing body aches and a sore throat. (*Id.*) The nurse checked his temperature and heart rate and told him to gargle saltwater for his sore throat. (*Id.*) Toledo avers that his symptoms got worse from April 24 through April 29, 2020. (*Id.*) On April 29, 2020, the nurse checked his lungs, temperature, and heart rate. (*Id.*) The nurse also gave Toledo a COVID-19 survey of questions to complete. (*Id.*) The nurse determined that Toledo was showing symptoms of COVID-19, and he was quarantined in another block known as the flats. (*Id.*)

On April 30, 2020, Toledo was tested for COVID-19. (*Id.* at 15.) Toledo was told that he tested positive for COVID-19 on May 1, 2020. (*Id.*) Once Toledo learned of the results, he started to get anxious and hot and told the nurse that he needed to go to the hospital. (*Id.*) The nurse told him to calm down and that he did not need to go to the hospital because he was not showing strong symptoms. (*Id.*) Toledo was treated with "vitamins and a pill called zinc for 6 days." (*Id.*) Toledo submitted a medical grievance, indicating that he tested positive for COVID-19 because he "was not provided with a medical mask and [was] denied medical treatment . . . [on] 4-06-20, when [he] told staff that [he] needed to be tested due to . . . not feeling well." (*Id.*)

On May 2, 2020, Toledo submitted his third grievance concerning inmate safety in light of COVID-19. (*Id.*) He received a denial response on May 8, 2020 denying his medical grievance, which he appealed. (*Id.* at 15-16.) Toledo avers that he wrote his last "grievance of

3

appeal" on May 13, 2020, alleging non-response and reiterating everything mentioned in prior grievances.  (*Id.* at 16.)

Toledo asserts violations of the Fifth, Eighth, and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983, seeking relief for having tested positive for COVID-19 while incarcerated at Northampton County Prison.  (*Id.* at 4.)  Specifically, Toledo avers that he sustained the following injuries: hot sweats, fevers at night, headaches, body aches, depression, anxiety, pain and suffering, and dizziness.  (*Id.* at 5.)  Toledo asserts that "all they did was give me vitamins." (*Id.*)  Toledo has requested a "jury trial to prove [his] case" and if he receives a favorable verdict, he "would like damages" in the amount of five million.  (*Id.* at 5, 12, 14, 16.)

## II.     STANDARD OF REVIEW

The Court will grant Toledo leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[2]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).   Conclusory allegations do not suffice.  *Id.*  As Toledo is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

---

[2] However, as Toledo is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

## III. DISCUSSION

The Court reads Toledo's Complaint as bringing claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Complaint does not state a plausible claim for the following reasons.

### A. Claims Against Prime Care Medical Division

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees,[3] typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). To satisfy the objective component, inmates must demonstrate that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and then disregarded that risk." *Id.* In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 295, 298-99 (1991); *see also Wilson v. Burks*, 423 F.

---

[3] Toledo has indicated in his Complaint that he is a "pretrial detainee." (ECF No. 2 at 4.) To the extent that he was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[4] *See Farmer*, 511 U.S. at 835.  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3)

---

[4] The standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis.  *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).  Although Toledo also refers to the Fifth Amendment in his Complaint, the Court cannot discern any basis for a claim under that amendment.

prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, as noted above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Here, Toledo has named Prime Care as the only Defendant in this case.[5] The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (per curiam) (quoting *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, in order to hold a private health care company like Prime Care liable for a constitutional violation under § 1983, Toledo must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d 575, 583-84 (citing *Bd. of the Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, Civ. A. No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted). "To satisfy the pleading

---

[5] Although Toledo discusses certain actions by prison officials or Prime Care employees, he did not name any of those individuals as Defendants and it does not appear that he intends to raise claims against them.

standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

Here, Toledo has not identified any policy or custom of Prime Care that caused him to be deprived of proper care or caused any other constitutional deprivation. His contentions that he tested positive for COVID-19 on May 1, 2020 because of the "negligence of the institution and denial of grievances," does not plausibly establish the existence of a policy or custom adopted by Prime Care that would give rise to a claim against the entity. The only clear mention of Prime Care in the Complaint is Toledo's allegation that he received a response to one of his grievances indicating that the county was following Prime Care's recommendations. (ECF No. 2 at 13.) But it is not clear whether that allegation refers to the absence of masks, the failure to test "everybody in the facility," or additional matters grieved by Toledo. While it is possible Toledo is attributing to Prime Care the facility's allegedly deficient response to COVID-19, he does not clearly allege that Prime Care is, in fact, so responsible. Accordingly, Toledo has not stated a claim against Prime Care and the claims against it must be dismissed. However, because the Court cannot say at this time that Toledo could never state a plausible claim based on a policy or custom, the claims will be dismissed without prejudice, and Toledo will be granted leave to file an amended complaint to attempt to cure the defects discussed above.

      B.  **Claims Based on Grievances**

Moreover, to the extent that Toledo alleges a violation of his rights solely with respect to the denial of or nonresponse to his grievances, this Court notes that claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly,

any facts alleged by Toledo about grievances do not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice.

IV.    CONCLUSION

For the foregoing reasons, the Court will grant Toledo leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court will allow Toledo to file an amended complaint within thirty days in the event he can state a plausible claim against an appropriate defendant or defendants.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).  An appropriate Order follows.

**BY THE COURT:**

*/s/ John M. Gallagher*
**JOHN M. GALLAGHER, J.**